Good morning, may it please the court, I am Christina Reeves and I represent the state of Arizona. In Montgomery v. Louisiana, the United States Supreme Court stated, quote, Miller does not require states to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A state may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole. That's at page 736 of the Supreme Court's opinion. Arizona has done exactly what the Supreme Court advised in Montgomery. Contrary to Vera's argument, when the Supreme Court advised the states to do exactly as Arizona has done, the Supreme Court did not advise the states to do something which under clearly established federal law was unconstitutional. The United States Supreme Court did not advise the states to violate the Constitution. Arizona's statute, which allows for juvenile offenders like Vera, who received a sentence of life with the possibility of release after 25 years, to be considered for parole after their 25 years, is not unconstitutional under any clearly established federal law. What was the sentence illegal at the time it was originally imposed? It was not, Your Honor. Why not? It was not because It was a sentence that you couldn't give life with the opportunity for parole after 25 years because Arizona had eliminated parole two years earlier, isn't that right? In 1994, Arizona did eliminate parole for all felonies. Right. So when two years later, the judge imposed the sentence with life with the opportunity for parole after 25 years, that wasn't a valid sentence, was it? It was a valid sentence at the time. It didn't — it did not become an issue until the Supreme Court decided Miller almost 20 years later. No, I think the part is on the parole part. I'm sorry, Your Honor? As to the granting of parole, that's, I think, Judge Zille's question. Why wasn't that an illegal sentence? Did the judge have the power to grant parole when the sentence was imposed? In Arizona, the judges don't have the power to grant parole. They have the power to sentence defendants to sentences which make them eligible for parole. So he gave him a sentence which made him — gave him a sentence of life with the possibility of release after 25 years. At the time he gave the sentence, the only possible forms of relief in Arizona were executive clemency and commutation. So really, it was a life sentence, was it not, period? As the Arizona Court of Appeals held, because the State had eliminated parole, in effect it was a life sentence at the time. If Miller had existed at that time, then there would be an issue. But Miller did not. And after Miller was decided, the Arizona Supreme Court remedied the situation by doing exactly as the Supreme Court said it should do in Montgomery v. Louisiana, by making juvenile offenders eligible for parole after they had served their 25 years. So tell me, what — I've looked at the Department of Corrections parole scheme, which differs from many states. Assuming hypothetically that he had served his 25 years, how would he apply for parole? I'm sorry, Your Honor? I don't understand what mechanism exists, from my review, for him to apply for parole. Because parole really doesn't exist in Arizona as it does in other states. There's a board of clemency. Arizona eliminated parole after 1994. Right. For sentences prior to 1994, there was a system of parole available in Arizona for defendants who had received a parole-eligible sentence. Arizona 1376-716 puts juvenile offenders who received a life without a possibility of release after a 25-year sentence, like Vera, into that parole scheme. But is there a parole scheme? I think — how does it work? What does he do to take advantage of 13716? I don't know the answer to that question. I don't know the mechanism for applying for parole in two years when he becomes eligible for parole. I don't know what mechanism will he apply to take advantage. So if there isn't one, then doesn't he not have the opportunity for parole? There is one. I just don't know what that mechanism is. But he's eligible for — he received a parole-eligible sentence. He is eligible for parole. He will be able to apply for parole in two years under the statute. Well, the reason I ask the question is that in the dicta in Montgomery, you have to have a meaningful opportunity for parole. And I don't see that the Department of Corrections has promulgated any regulations or procedures that would cover this situation. So if that's the case, he really doesn't have a meaningful opportunity for parole. And in your briefing, you just said you didn't take a position when it was raised by the other side. You didn't take a position on whether such a mechanism exists or not, which I found puzzling. I'm sorry. We didn't take a position as to whether or not a mechanism existed for him to apply for parole? Yes. I don't recall that from our briefing, but the State — the position of the State of Arizona is there does exist a mechanism for him to apply for parole. But you don't know what it is. I'm not familiar with the system for parole, but I do know that under Arizona law, he is eligible for parole. But that's meaningless if he — if there's no system for applying for it. There is a system for applying for parole. There is a — was a system that was in effect before 1994 that those defendants that were sentenced prior to 1994 that were eligible for parole, that mechanism still exists. And now he's eligible for that mechanism as well. But you just told us you don't know that. I don't understand what you're saying. So are you saying now that the system that existed before 1994 is what is in fact in place now? That mechanism still exists. I don't know what the mechanism is, but I know that there is a mechanism for him to become — for him to apply for parole. Well, let me ask you this. Is there a separate board that considers these requests other than the Board of Clemency? That I don't know, Your Honor. But what I do know is that the State of Arizona, the Arizona Court of Appeals, who are — is familiar with parole in Arizona, looked at this sentence and said there was a meaningful opportunity for release, and there is nothing under clearly established Federal law that would say that that was a incorrect decision. Well, if it's true, right, it's not clearly — it's not an improper decision if it's true that there's a meaningful opportunity. But if it's as a matter of fact they are making something up that doesn't exist in Arizona, then it is a problem. There's no basis for determining that they were making anything up. The Arizona Court of Appeals looked at this sentence and said there was a meaningful opportunity for release. No, the Arizona Court of Appeals based its decision on the statute, and that's the argument you're making today. Yes, Your Honor. They did not consider the question, did they, about whether there's a regulatory mechanism for this person or people similarly situated to apply for parole. I don't see it in the decision, either in the VERA or in any subsequent decision of the California — or the Arizona Court of Appeals. Didn't VERA raise this issue in the — in the amended petition and say essentially Arizona has no process for seeking parole? And do you remember what the State of Arizona answered to that allegation? I'm sorry. Raised in the PCR petition or raised in the habeas petition? In the amended habeas. In the habeas — amended habeas petition. They alleged that there was no parole mechanism in place in Arizona. And in the answer, the State of Arizona took no position on whether the Arizona Department of Corrections lacks a mechanism for referring prisoners. So — and you can't tell us today whether there's any mechanism for parole. Is that where we are? What I can tell you is that the Supreme Court said that the states could provide an opportunity for release, for parole, for defendants, and by that they would solve — remedy a Miller violation. And that's exactly what Arizona has done. So let's go back to the original sentencing date. You apparently conceded with the judge in giving — gave a life sentence. Is that where we are? He gave a life sentence because there was no parole in Arizona at the time. He gave a sentence of life with the possibility of release after 25 years. At the time he issued the sentence, parole was not an available form of release. After Miller in Montgomery, why isn't he entitled to be resentenced to the only degree of murder? If he was resentenced, the only sentence he would — if he was resentenced today, there is — he would be entitled to the exact same sentence that he now has, which is life with the possibility of release, because even though in 1995 Arizona did not have a — parole was not available for him, now parole is available for him, so he would be able to be sentenced to life with the possibility of release after 25 years. That would be a constitutional sentence. And that would be the only possible sentence that he could receive. So what happens if in two years, when his 25 years are up, he tries to apply for parole and there's no application that Arizona has in existence and there's nothing he can do, there's nothing that he can figure out to apply for parole? What happens then? And I assume he would bring a — he would bring another petition, PCR petition, into the State court. So, in 2014, the Pima County Superior Court granted the petition for habeas, for post-conviction relief, concluding his sentence was unconstitutional. That was in 2014. So, if they had gone to the sentence — if that judge had resentenced Vera then because of that, what sentence would he have had imposed? Under Arizona law, a trial court can only give a sentence for the crime of conviction. So the only sentence he could have received was, again, life with the possibility of release after 25 years. Arizona — Well, just a moment. The Arizona had not yet passed in January of 2014. I don't think Arizona had yet passed the statute or the House Bill 2593 — They had not. — which essentially cured the problem. So, you've got a hiatus. The trial court grants relief and says, I'm going to resentence. So, let's assume that they'd gone to a resentence the next week. What sentence was available at the time under Miller and Montgomery? Under Arizona law, the trial court only had the authority to give a sentence that was authorized by law for the crime of conviction. Arizona vests the Supreme Court with the authority to correct illegal sentences. So, if it was a situation where 1370, 716 had not passed, and so the sentence was illegal or unconstitutional, Arizona vests the United — the Arizona Supreme Court with the authority to remedy that situation. And most likely, what the Arizona Supreme Court would have done is exactly what the Supreme Court advised the States to do in Montgomery and make parole available for juvenile offenders like Vera, which would have had the exact same effect as 1376. Are you saying there could not have been a resentencing because the trial court didn't have the authority to do a resentencing? The trial court had authority to do the resentencing. The trial court didn't have the authority to give Vera a sentence other than what he received, other than what he already had. It would have taken the Arizona Supreme Court to remedy the — if the sentence had remained illegal, it would have been the Arizona Supreme Court that had the authority to remedy that illegal sentence. Do you want to reserve some time? I will. Thank you, Your Honor. Good morning. My name is Natman Shea. I am privileged to be here for the Arizona Justice Project on behalf of I appreciate very much the Court expediting the consideration of this case. The Court's hit the nail on the head. First of all, what Montgomery said, indictive, was it is possible for a State to correct Miller violation by parole, but it still has to be the opportunity for parole. It doesn't — you don't have to get parole. Yes, exactly. But it has to be a meaningful opportunity. Ronnie Vera was a 16-year-old boy who was convicted of being an accomplice to his companion's burglary of a patio to steal a bicycle, which is kind of a juvenile kind of thing, and Ronnie ran away. Now, it obviously had tragic consequences, but the sentencing judge at the time did not have the ability to give the kind of consideration that Miller requires and certainly did not. So that's never happened. And even if we assume that Arizona will get its act together, which it has not, and have some parole proceedings in place, the existing parole statutes in 1994 left it entirely up to the Board to decide whether or not somebody got parole. It provided no criteria. It certainly did not require that the Board consider age or immaturity or whether the defendant is one of the rare individuals who cannot be rehabilitated. So even under the existing law, there is no way Arizona complies with Miller. So I think that's a good point. But your client isn't — hasn't done 25 years yet, is that right? That's correct. So we — Arizona could, in the next two years, develop a system that would comply with Miller, potentially? It could. So how is this issue ripe? I mean, it seems like we do need to be careful to make sure that we don't say anything here that precludes this if in two years he really doesn't have eligibility for parole. But it seems like the Court of Appeal in Arizona said that he's — by enacting 137716, provided Vera with an opportunity for parole consistent with the meaningful opportunity for release contemplated by Miller. So maybe they're wrong. Maybe there's no such opportunity. But how can we say that now when he isn't ready to apply anyway? Well, and that's where the ex post facto violation comes in. This — the — and this is a very narrow issue, we would concede. But the trial judge ordered that he be resentenced. And as was pointed out, at the time, 716 did not exist. And the only option then for the judge was to craft a legal sentence. Now, the State's position — But the State appealed that, right? So, I mean, if the — if there had been a resentencing immediately, then maybe we'd have a sentence to look at, but we don't have a sentence to look at from resentencing because the State appealed. Right. And the State's position, the result of that was that Ronnie lost the ability to have the judge impose the sentence when that — that order was — was granted. And — But what about Miller tells us that as soon as you make a Miller claim, you need to be resentenced, and even if it's not after — at 25 years yet, that has to happen immediately? How do we know that from Supreme Court authority? Well, what the Supreme Court said is that a child's — how children are constitutionally different from adults for purposes of sentencing in light of their lack of maturity, an underdeveloped sense of responsibility, their susceptibility to negative influences, et cetera.  When the trial judge ordered the resentencing, that was a benefit to Ronnie Vera and one that — that complied with the Constitution. So the question then is, does 716 violate the ex post facto test, which — does it apply to events occurring before its enactment? Clearly, it applied to the event of the sentencing judge granting sentencing. But Arizona could always appeal the sentencing judge's ruling, which they did, and the Arizona appellate court then made a ruling after the statute — you call it 716 — was passed. So why didn't they fix it when they passed the statute and the court of appeals approved it? Because the court of appeals decision, Your Honor, very frankly, is simply wrong. No one has — But you're not appealing the court of appeals of Arizona's opinion here, are you? No. I'm not appealing anything here. So you're kind of bound by that history, are you not? Well, the Arizona court of appeals did not decide the issue that Judge Zapata ruled on. Because they said the statute fixed the problem, right? That's correct. That's what the court found. And what's wrong with that? What's wrong with that is that the statute does not require any consideration of the fact that Ronnie Vera was a child when this occurred. It doesn't require — Well, but that's what we'll know in two years, right? In two years, we'll find out what happens when he tries to apply and whether they consider his youth and other characteristics. Well, with all due respect, I don't think we have to wait to see if the State corrects the problem. At what point does the Miller violation vest? I mean, he didn't have this consideration at sentencing, and the State has made no showing that he ever will. If you look at — So what do you think Montgomery v. Louisiana means? Well, what Montgomery said was it's possible that it could be corrected by parole. And that was backed up, but it — By giving eligibility for parole, just a statute just like this, right? Well, what it did was cited, as an example, the Wyoming statute. And the Wyoming parole laws very specifically require all of the things that Miller requires and has repeated opportunities for the defendant to go back, all of the provisions that comply with Montgomery and with Miller. So I guess — And how would it make a difference to your client? I mean, if tomorrow Arizona amends 13-716 to add the things that are in the Wyoming statute, will your client be any differently off than if they had done it in the first place? Well, he — he will be. I guess my question is — He would be differently off? I don't see how. Well, he has the right to a legal sentence today. He's serving, as Judge Zapata found, he has never received a legal sentence. He received an illegal sentence, as Judge Zilley pointed out initially, and that's never been overturned. So he has the right to a legal sentence. And to have that come back — But Arizona has construed the sentence. 13-716 now tells us that his sentence means he's eligible for parole. Now we can wonder about whether he will really have a meaningful opportunity for parole and whether they'll consider the right things. But we don't know that yet for your client because he still has two years before he can even try. Well, he still doesn't have a legal sentence. And it's like a care with a stick, I guess. Can the state just keep putting this off? What if it changed the law in two years and said, OK, we're going to change it to he'll be eligible for parole after he serves 30 years? And we can't play what-ifs with the constitutional rights of children. And Miller — I mean, Miller's a substantive decision. So it was effective when Ronnie Vera was originally sentenced. It applies to his original sentence. And we cannot satisfy constitutional rights by saying, well, maybe the state will correct it sometime in the future. If the sentence is to be legal, then when he is sentenced, there has to be a mechanism in place for that sentence to comply with Miller. And just saying, well, OK, he's eligible for parole after 25 years when there's no mechanism in place, when there's nothing that says anybody is ever going to consider his immaturity, his youth, the fact that the psychologist appointed by the court for sentencing said this is a 16-year-old boy, but he really functions more at the level of an early teenager. That's all being ignored by the system. And you know, if you go to the Arizona DOC website, it says that Ronnie Vera will be eligible for parole in 99,999. So I hope that the court is not satisfied with saying, well, they might fix it. Well, but can you tell me more about the status? I mean, as I confess, I've looked at the regulations, I've looked at the website. It doesn't seem to me that the parole board exists in function as it did pre-1994. Is that true? Well, Your Honor, the Board of Executive Clemency would hear a parole application by an inmate sentenced before 1994. Now, so your argument is that because there are no standards that govern it as pure discretionary that it's actually clemency and not true parole? Well, that would be a very, very sufficient, very accurate argument. There are no standards. And on top of that, the Arizona courts have said we have no ability to regulate the parole board or the granting of parole. That's strictly out of the hands of the courts. All the courts can do is impose a sentence. So as things stand, Ronnie Vera's Eighth Amendment rights are not being complied with, and his ex post facto rights have been violated because he's been given, he was given a new sentencing, and the State has not done anything to comply with that other than to his detriment. I'm in trouble with your ex post facto argument because everybody seems to agree that the initial sentence was a life without parole, and now he has a chance of parole under the new statute. So why is the new statute an ex post facto violation? Because he doesn't have a meaningful opportunity for parole. But even if that's true, he's the same as he was when he was originally sentenced. And for it to be an ex post facto violation, he has to be worse off, doesn't he? Well, yes. And I think the alternative is that, as Judge Sopata pointed out, the burden has been shifted to him to establish that he meets the Miller requirements instead of on the State to establish he's one of the rarer. But he wasn't eligible at all before. So maybe he's better off, in which case there's no ex post facto violation. Even if it's his burden, he still has the chance. He's still a little bit better off. I don't understand how having the burden gets you worse off than not eligible at all. He still was eligible for a commutation. But he still is now. I mean, the things other than parole, like clemency, I don't believe that they've changed, right? Whatever existed for clemency exists still. That's like totally. No. There's a more onerous system now that he has to go get a recommendation from the board and then the governor grants it. But even beyond that. But that's completely aside from Miller and. Sure. Sure. But even beyond that, under the 1995 law, if the government had — if the governor had commuted his sentence, he would have been released from any supervision. It would have been over. Under 716, he's required to spend the rest of his life under parole supervision. And that's a heavy burden that he would not have faced before. Regardless, I think it probably. I don't think he can have — he can have commutation now that would get him into the same place he could have been if he'd gotten commutation before. No. I do not. And where — how do we know that? I don't remember that really being discussed in the briefs, but I think we were talking about parole. It is not discussed in the briefs, and I would have to pull out the statute, and I'd be happy to submit that. But if I can just say in closing that this is a case that beyond the mere aspects of law, Ronnie Vera is really an extraordinary young man. And while we hope the Court will simply and rapidly affirm Judge Zapata's order, at the very least, we hope if that is not going to happen, that mediation can occur, that some means be taken because this young man certainly should not be incarcerated. Thank you. There is on a court of appeals held that Vera's sentence was constitutional and that he had a meaningful opportunity for release. Because this is a habeas case, Vera has the burden of showing that that decision involved an unreasonable application of clearly established Federal law in order to obtain relief. He has not met that burden. What do we do, though, if it's a misrepresentation of the facts? I mean, you can have violation of clearly established law or an unreasonable determination of the facts. And what if there's no parole system and they say he has a meaningful opportunity for parole? Isn't that a factual mistake? The unreasonable determination of the facts argument has not been made by Vera in this court and was not made by Vera in the court below. No, we're just asking. But, yeah, just to ask. Instead of saying he didn't make the argument, why don't you just answer the question? Of course, Your Honor. Thank you. Arizona, the Arizona court is the best arbiter of Arizona law. And looking at the system of Arizona law, they determined that Arizona, based on 137716, offered Vera a meaningful opportunity for a release. So, again, I'm just mystified at what that is right now. Does he have an opportunity to apply for clemency? Or is he eligible for clemency? He always had the opportunity to apply for clemency. After the Arizona statute, he is now eligible for parole. So he does have the opportunity to apply for parole after he has served his minimum calendar years of 25 years. So, and it goes to the same board? I don't know that, Your Honor. Okay. There are no further questions. We ask that this court reverse the district court and deny the habeas petition. Thank you. Thank you, counsel. Thank you both for your arguments. Case just argued to be submitted.
judges: Thomas, Friedland, Zilly